Andrea Lynn Chasteen
Will County Circuit Clerk
Twelfth Judicial Circuit Court
Electronically Filed
2026LA000186
Filed Date: 2/27/2026 2:06 PM
Envelope: 36871616
Clerk: GC

**IN THE CIRCUIT COURT OF WILL COUNTY
TWELFTH JUDICIAL CIRCUIT**

|  |  |  |
|---|---|---|
| SAM SHEIKALI, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.:  **2026LA000186** |
| | ) | |
| v. | ) | |
| | ) | |
| PHYSICIANSAGAINSTANTISEMITISM | ) | |
| and DORON KORINOW | ) | |
| | ) | JURY TRIAL DEMAND |
| Defendants | ) | |
| | ) | |

**COMPLAINT**

NOW COMES, Plaintiff, Sam Sheikali, by and through his attorney Noah Halpern,

CAIR-Chicago, brings this complaint against Physiciansagainstantisemitism and Doron Korinow

in support of his claims states as follows:

**JURISDICTION AND VENUE**

1. Plaintiff Sam Sheikali is a resident of Will County, Illinois.

2. Defendant, Physiciansagainstantisemitism ("PAA") is an internet collective that, on

   information and belief, does not have a registered address.

3. Defendant, Doron Korinow is a resident of Massachusetts.

4. This Court has subject matter jurisdiction because Plaintiff lives and works in the state of

   Illinois and a substantial part of the events, omissions, or injuries giving rise to the claims

   occurred in the State of Illinois.

5. Further, Defendants "directed [their] activities at the forum state and the cause of action

   arose out of or relates to" Defendants' contacts with Illinois because of Defendants'

   choice to purposefully target an Illinois resident. *See Russell v. SNFA*, 2013 IL 11390 at

   P40.

Initial case management set for
_05/28/2026_ at: _9:00_ a.m.

RM:905

REQUEST RECEIVED ON-MMILLER@MSMILLERLAW.COM-04/17/2026 10:56:38 AM DOCUMENT SUPPLIED ON 04/17/2026 10:56:23 AM 177/49726343

Doc ID: 5a45451c5d708cdc330278f5ee6ad5c1bf3c96d2

6. Venue is proper in Will County under 735 ILCS 5/2-101 because Plaintiff resides in Will County and a substantial part of the events or omissions giving rise to the claims occurred in Will County.

**FACTS**

7. Dr. Sam Sheikali ("Dr. Sheikali") is an Emergency Medicine Physician who works in a variety of emergency rooms throughout the Chicagoland area.

8. The nature of his work means that Dr. Sheikali treats anyone that comes through the emergency room doors, regardless of who they are or what they have done to end up in the emergency room.

9. The job requires it, the Hippocratic oath demands it, and Dr. Sheikali takes great pride in it – every patient that Dr. Sheikali sees is treated with respect and dignity.

10. Dr. Sheikali regularly receives positive performance reviews, rarely receives patient complaints, and has never had a bias complaint made against him by a patient or colleague. According to the Press Ganey Doctor Survey[1], Dr. Sheikali scores in the 93rd percentile of all doctors in patient satisfaction.

11. In hospital sourced feedback, Dr. Sheikali is regularly praised by his patients, calling him "truly the best Dr. I have ever been seen by", "Dr. Sam was wonderful", and he is "in a league of his own". He is regularly described as attentive, caring, and professional.

12. On or around October and November 2024, Dr. Sheikali traveled to Lebanon on a medical mission.

13. During this time, Israeli forces were bombing towns in southern Lebanon.

---

[1] The Survey is a well regarded and commonly used mechanism for measuring patient satisfaction.

REQUEST RECEIVED ON-MMILLER@MSMILLERLAW.COM-04/17/2026 10:56:38 AM DOCUMENT SUPPLIED ON 04/17/2026 10:18:23 AM 2773026348

Doc ID: 5a45451c5d708cdc33027815eee6ad5c1bf3c96d2

14. Dr. Sheikali worked in local Lebanese emergency rooms treating victims of the attacks as well as providing local doctors with the latest training on how to handle mass casualty events.

15. Upon his return, Dr. Sheikali posted on social media about the patients he treated and the injuries they had suffered – many inflicted by the bombs of the Israeli army.

16. Dr. Sheikali has also posted about the ongoing genocide in Gaza and the oppression of the Palestinian people.

17. His posts advocate for the freedom and dignity of the Palestinian people and criticize the Israeli government for its oppressive tactics and apartheid system.

18. Never in his posts does Dr. Sheikali equate the religion of Judaism to the political ideology of Zionism or suggest that the Israeli government is representative of all Jewish people.

19. On or around March 2, 2025, Defendant PAA posted a carousel of images from Dr. Sheikali's Instagram alongside Defendant PAA's own commentary.

20. The full post is captioned, "Sam Sheikali is an ER doctor who appears to feel a strong affection for 'the resistance.' Affection for facts, not so much."

21. The clear implication of the caption and the use of the quotation marks around the words "the resistance" is to suggest that Dr. Sheikali is supporting terrorism by posting about the liberation of the Palestinian people. See paragraph 23.

22. The carousel included a photo of Dr. Sheikali alongside his brother, who had recently graduated from medical school, with the caption, "He's got a brother who recently graduated from medical school, we'll be watching…" (ellipses in the original).

REQUEST RECEIVED ON-MMILLER@MSMILLERLAW.COM-04/17/2026 10:56:38 AM DOCUMENT SUPPLIED ON 04/17/2026 10:18:23 AM 277819726348

Doc ID: 5a45451c5d708cdc33027815ee6ad5c1bf3c96d2

23. Dr. Sheikali's brother does not post about Gaza; Defendant PAA chose to intimidate Dr. Sheikali's brother solely because of who he is.

24. Below the post, Defendant PAA responded to a comment defending Dr. Sheikali with, "he can have a livelihood. Just not one that potentially endangers lives. He hates Jews. Jews are potential patients. This is purely a patient safety concern. If he wants to live in harmony with western civilization and make it clear that the 'resistance' aka designated foreign terrorist organizations are not where his allegiance lies, we would welcome him with open arms in our professional community."

25. Defendant PAA expressed the intention to have Dr. Sheikali fired and lose his ability to practice medicine.

26. Defendant PAA defamed Dr. Sheikali with claims that he "endangers lives", that he is "a patient safety concern", and that his "allegiance lies" with "designated foreign terrorist organizations".

27. Defendant PAA's post was amplified by other people and groups intent on silencing legitimate criticism of Israel.

28. It has led to Dr. Sheikali's doxing and numerous hateful and Islamophobic comments on his social media account and attached to the posts about him.

29. One such person is Defendant Dr. Doron Korinow.

30. Defendant Korinow posted a long screed into the Facebook group EM Docs.

31. At the time, EM Docs was a Facebook community of emergency room doctors with 24,000 members, roughly half of all American Board of Emergency Medicine (ABEM) certified doctors in the country.

32. Dr. Sheikali was a member of the Facebook group as well.

REQUEST RECEIVED ON-MMILLER@MSMILLERLAW.COM-04/17/2026 10:56:38 AM DOCUMENT SUPPLIED ON 04/17/2026 10:18:23:30 2778 0726343

Doc ID: 5a45451c5d708cdc330278f5ee6ad5c1bf3c96d2

33. Defendant Korinow included in his post that Dr. Sheikali, "needs to identify himself now, because he is an antisemite and likely taking care of Jewish patients. All of us here treat all patients the same. But posts like this about Jews and the 'occupation entity' prove that this EMDoc should not be practicing medicine and his chair should know this."

34. The post includes accusations of Dr. Sheikali supporting terrorism and ahistorical interpretations of Israeli politics and the opinions of the Palestinian people.

35. Defendant Korinow's post also included screenshots of Defendant PAA's post.

36. In a response to a member of the group defending Dr. Sheikali, Defendant Korinow responded, "When [Dr. Sheikali] posts on a "physicians against antisemitism" Instagram group as an ER DOCTOR who loves the 'resistance,' and supports one of the worst terrorist groups in the world, and calls to wipe Israel off the map in order to 'free Palestine,' then yes slandering this ER doc who should not be treating patients in a group of 24k ER docs is quite appropriate. Why do you think it's not appropriate?"

37. Numerous people contacted Dr. Sheikali's employer in an effort to get him fired.

38. Individuals also contacted ABEM, the national certification board, in an effort to have Dr. Sheikali's certifications taken from him. Upon information and belief, one of these individuals was Defendant Korinow.

39. Dr. Sheikali and his family have experienced extreme emotional distress including fear that someone would discover their home address and anxiety over whether Dr. Sheikali would lose his job.

40. Dr. Sheikali installed additional home security systems because of the posts made about him.

REQUEST RECEIVED ON-MMILLER@MSMILLERLAW.COM-04/17/2026 10:56:38 AM DOCUMENT SUPPLIED ON 04/17/2026 10:18:23 AM 277810526348

Doc ID: 5a45451c5d708cdc33027815ee6ad5c1bf3c96d2

41. The posts were seen by staff, colleagues, and administrators at the hospitals he works at, affecting his reputation and his professional relationships.

42. The posts led to investigations at work and by ABEM, both of which found that there was no substance or truth to the posts; nevertheless, the investigations prolonged Dr. Sheikali's distress and anxiety, and placed his professional standing, certification, and livelihood at risk

43. Perhaps most importantly, the posts cause interfamily strife with his brothers feeling forced to distance themselves from Dr. Sheikali, his wife concerned about his ability to continue to support the family, and his in-laws and parents concerned for his well-being.

44. The posts created pressure for Dr. Sheikali to cease his activism and speech in favor of Palestinian rights.

## COUNT I: DEFAMATION *PER SE* FOR DEFENDANT PAA STATING THAT PLAINTIFF "ENDANGERS LIVES"

45. Plaintiff restates and realleges all proceeding paragraphs as if pleaded herein.

46. "A statement is defamatory if it tends to harm a person's reputation to the extent that it lowers that person in the eyes of the community or deters others from associating with that person." *Tuite v. Corbitt*, 224 Ill.2d 490, 501 (2006).

47. "A statement is defamatory *per se* if its defamatory character is obvious and apparent on its face and injury to the plaintiff's reputation may be presumed." *Id*.

48. In Illinois, there are five categories of defamation *per se*: "(1) words that impute a person has committed a crime; (2) words that impute a person is infected with a loathsome communicable disease; (3) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties; (4) words that impute a person lacks ability or otherwise prejudices that person in her or his profession; and (5) words

Page **6** of **16**

REQUEST RECEIVED ON-MMILLER@MSMILLERLAW.COM-04/17/2026 10:56:38 AM DOCUMENT SUPPLIED ON 04/17/2026 10:18:23 AM 2773107263418

Doc ID: 5a45451c5d708cdc33027815ee6ad5c1bf3c96d2

that impute a person has engaged in adultery or fornication." *Solaia Technology LLC v. Specialty Pub. Co*, 221 Ill. 2d 558, 580 (2006).

49. Here, Defendant PAA's comments meet the third and fourth types of defamation *per se*.

50. Defendant PAA states that Dr. Sheikali "potentially endangers lives".

51. This false statement impugns Dr. Sheikali's integrity and suggests that he is unable to do his job.

52. There is no reasonable innocent construction of Defendant PAA's statement.

53. Defendant PAA's statement is not an expression of opinion.

54. When determining if a statement is fact or opinion, courts consider "whether the statement has a precise and readily understood meaning; whether the statement is verifiable; and whether the statement's literary or social context signals that it has factual content." *Solaia Technology*, 221 Ill. at 581.

55. Further, "[i]t is well established that statements made in the form of insinuation, allusion, irony, or question, may be considered as defamatory as positive and direct assertions of fact." *Berkos v. National Broadcasting Co.,* 161 Ill. App. 3d 476, 487 (1987).

56. The statement made by Defendant PAA has a precise and readily understood meaning.

57. Defendant PAA's statement is an accusation that Dr. Sheikali poses a danger to patients based on their religion.

58. The statement made by PAA is verifiably false.

59. Dr. Sheikali saves lives every day he works; he does not endanger lives.

60. This is verifiable by looking at Dr. Sheikali's work history and the fact that he is an emergency medicine physician – his job description is literally to do the best he can to save lives.

REQUEST RECEIVED ON-MMILLER@MSMILLERLAW.COM-04/17/2026 10:56:38 AM DOCUMENT SUPPLIED ON 04/17/2026 10:18:23 AM 1784726343 8

Doc ID: 5a45451c5d708cdc33027815eee0ad5c1bf3c96d2

61. Those accusations are not without potential serious repercussions.

62. The Illinois Department of Financial and Professional Responsibility (IDFPR) can discipline or even revoke the license of a physician that has behaved discriminatorily.

63. After Dr. Sheikali was doxed and the defamatory statements were spread online, his employer initiated an investigation into Dr. Sheikali.

64. The investigation revealed no wrongdoing or anything to suggest that Dr. Sheikali was not an excellent doctor.

65. In addition to reputational harm, Dr. Sheikali has experienced emotional distress because of Defendant's defamatory statements including stress, anxiety, and a fractured relationship with his brothers and family.

66. His reputation suffered at work, and he had to once again prove himself to his doctor and nurse colleagues.

WHERFORE, Plaintiff respectfully prays that this Court

A. Award damages in the amount of $200,000.00

B. Award punitive damages

C. Order Defendant to remove all social media posts that mention Plaintiff

D. Award any and all other relief this Court deems just and equitable.

## COUNT II: DEFAMATION *PER SE* FOR DEFENDANT PAA STATING THAT POSTING ABOUT PLAINTIFF IS "PURELY A PATIENT SAFETY CONCERN"

67. Plaintiff restates and realleges all preceding paragraphs as if pleaded herein.

68. Defendant states that the decision to post about Dr. Sheikali "is purely a patient safety concern."

69. In the context of the full post, Defendant claims, "He hates Jews. Jews are potential patients. This is a purely a patient safety concern."

REQUEST RECEIVED ON-MMILLER@MSMILLERLAW.COM-04/17/2026 10:56:38 AM DOCUMENT SUPPLIED ON 04/17/2026 10:18:23 AM 2778952624 8
Doc ID: 5a45451c5d708cdc33027815ee6ad5c1bf3c96d2

70. This false statement impugns Dr. Sheikali's integrity and suggests that he is unfit to do his job.

71. The statement made by Defendant has a precise and readily understood meaning.

72. There is no reasonable innocent construction of Defendant's statement.

73. Defendant's statement is not an expression of opinion.

74. Although a statement such as "He hates Jews" might normally be an opinion, in this context it can be read as a verifiably false statement of fact. *Dobias v. Oak Park and River Forest High School Dist. 200*, 2016 Il App (1st) 152205 ("A false assertion of fact can be defamatory even when couched within apparent opinion or rhetorical hyperbole.").

75. Defendant PAA holds itself out as an expert on antisemitism and antisemitic incidents.

76. Defendant PAA claims to be a reliable source on antisemitism in the medical community.

77. Defendant PAA then states its spurious accusation that Dr. Sheikali is a patient safety concern for Jewish patients because "He hates Jews".

78. The statement that Dr. Sheikali presents a patient safety concern is verifiably false.

79. The statement that Dr. Sheikali hates Jews is verifiably false.

80. Dr. Sheikali political commentary distinguishes between Judaism, Jewish people and the political government of the state of Israel.

81. His criticisms are of the policy and government of the state of Israel and not directed at Jewish people writ large.

82. Most importantly, his opinions about the state of Israel do not affect his work or create a patient safety concern.

REQUEST RECEIVED ON-MMILLER@MSMILLERLAW.COM-04/17/2026 10:56:38 AM DOCUMENT SUPPLIED ON 04/17/2026 0h18:23:501 27819726349

Doc ID: 5a45451c5d708cdc33027815eee6ad5c1bf3c96d2

83. None of Dr. Sheikali's employers, colleagues, or patients have ever expressed something that would indicate a patient safety concern – it is verifiably false to suggest that there are safety concerns associated with Dr. Sheikali's work or that Dr. Sheikali's social media posts warrant patient safety concerns.

84. His patient reviews and patient satisfaction surveys speak to an emergency room doctor doing high quality work and helping every patient he can.

85. As a result of these statements being seen by colleagues and coworkers Dr. Sheikali has experienced reputational harm.

86. In addition to reputational harm, Dr. Sheikali has experienced emotional distress because of Defendant's defamatory statements including stress, anxiety, and a fractured relationship with his brothers and family.

WHERFORE, Plaintiff respectfully prays that this Court

A. Award damages in the amount of $200,000.00

B. Award punitive damages

C. Order Defendant to remove all social media posts that mention Plaintiff

D. Award any and all other relief this Court deems just and equitable

### COUNT III: DEFAMATION *PER SE* FOR DEFENDANT PAA STATING THAT PLAINTIFF'S ALLEGIANCE IS TO TERRORIST ORGRANIZATIONS AND THAT HE IS NOT WELCOME IN THE MEDICAL COMMUNITY

87. Plaintiff restates and realleges all preceding paragraphs as if pleaded herein.

88. Defendant falsely claims that Dr. Sheikali's "allegiance lies" with "foreign terrorist organizations" and if he would denounce this allegiance then Defendant PAA, speaking on behalf of the entire medical community, "would welcome him with open arms in our professional community."

REQUEST RECEIVED ON-MMILLER@MSMILLERLAW.COM-04/17/2026 10:56:38 AM DOCUMENT SUPPLIED ON 04/17/2026 10:18:23 AM 4778496264 8
Doc ID: 5a45451c5d708cdc33027815ee6ad5c1bf3c96d2

89. Defendant PAA states that Dr. Sheikali has pledged allegiance to terrorist organizations.

90. The clear implication is that because of his loyalty to terrorist organization, he is currently not welcome in the medical community.

91. This statement imputes a lack of ability or otherwise prejudices Dr. Sheikali in continuing his profession and is a direct attack on his integrity.

92. The statement made by Defendant PAA has a precise and readily understood meaning.

93. There is no reasonable innocent construction of Defendant PAA's statement.

94. Defendant PAA's statement is not an expression of opinion.

95. Defendant PAA's statement is verifiably false.

96. Pledging allegiance to a terrorist organization is a serious allegation that brings with it potential criminal repercussions.

97. Dr. Sheikali is a proud American citizen without a connection to any terrorist organization.

98. Further, Dr. Sheikali is welcome in the medical community; he is employed, board certified, and gets along with the dozens of colleagues that he interacts with on a daily basis despite Defendants' attempts to ostracize him.

99. After a series of complaints were made by followers and readers of Defendants' posts, ABEM and Dr. Sheikali exchanged a series of letters; at the end of which, ABEM acknowledged he remained a member of the medical community in good standing.

100. In addition to reputational harm, Dr. Sheikali has experienced emotional distress because of Defendant's defamatory statements including stress, anxiety, and a fractured relationship with his brothers and family.

WHERFORE, Plaintiff respectfully prays that this Court

REQUEST RECEIVED ON-MMILLER@MSMILLERLAW.COM-04/17/2026 10:56:38 AM DOCUMENT SUPPLIED ON 04/17/2026 10:18:23 AM 277319726349

Doc ID: 5a45451c5d708cdc33027815ee6ad5c1bf3c96d2

A.  Award damages in the amount of $200,000.00

B.  Award punitive damages

C.  Order Defendant to remove all social media posts that mention Plaintiff

D.  Award any and all other relief this Court deems just and equitable

## COUNT IV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS BY DEFENDANT PAA

69. Plaintiff restates and realleges all preceding paragraphs as if pleaded herein.

70. The elements of Intentional Infliction of Emotional Distress (IIED) in Illinois are: (a) the defendant engaged in "extreme and outrageous" conduct toward the plaintiff, (b) the defendant intended or recklessly disregarded the probability that the conduct would cause the plaintiff to suffer emotional distress, (c) the plaintiff endured "severe or extreme" emotional distress, and (d) the defendant's conduct actually and proximately caused the plaintiff's distress. See *Duffy v. Orlan Brook Condo. Owners' Ass'n*, 981 N.E.2d 1069, 1079 (1st Dist. 2012), citing *Ulm v. Memorial Medical Center*, 964 N.E.2d 632, 641(4th Dist. 2012).

71. Defendant's statements and implications that Dr. Sheikali is loyal to terrorist organizations, that he hates Jews, that he endangers lives, or that he presents a patient safety concern is extreme and outrageous and designed by Defendant to elicit harassment to Dr. Sheikali online and in his place of employment.

72. Defendant knew that making these false statements would cause severe emotional distress and wanted to use its platform to attempt to silence Dr. Sheikali's advocacy.

REQUEST RECEIVED ON-MMILLER@MSMILLERLAW.COM-04/17/2026 10:56:38 AM DOCUMENT SUPPLIED ON 04/17/2026 10:18:23:804778497263448

Doc ID: 5a45451c5d708cdc33027815ee6ad5c1bf3c96d2

73. Dr. Sheikali has experienced severe emotional distress because of the comments and what has followed since Defendant made them including interfamily strife, anxiety over his and his family's safety, and fear over losing his job.

74. The comments have led to his harassment online, threats made to his family and his job, and anxiety.

WHERFORE, Plaintiff respectfully prays that this Court

A.  Award damages in the amount of $200,000.00

B.  Award punitive damages

C.  Order Defendant to remove all social media posts that mention Plaintiff

D.  Award any and all other relief this Court deems just and equitable

## COUNT V: FALSE LIGHT INVASION OF PRIVACY BY DEFENDANT PAA

74. Plaintiff restates and realleges all preceding paragraphs as if pleaded herein.

75. Defendant's posts and comments placed Dr. Sheikali in a false light by claiming he was endangering lives, unsafe for patients, hates Jews, and is loyal to terrorist organizations.

76. Those comments were made publicly via Instagram and led to further posting and ultimately the doxing of Dr. Sheikali.

77. Being told that you are unfit to do your job as a doctor because you endanger lives, hate Jews, are unsafe for patients, or have pledged allegiance to a terrorist organization would be highly offensive to a reasonable person.

78. Defendant acted with actual malice because Defendant sought to have Dr. Sheikali removed from this job and penalized for his social media posts.

79. Defendant acted with reckless disregard as to whether the statements Defendant made were true or false.

REQUEST RECEIVED ON-MMILLER@MSMILLERLAW.COM-04/17/2026 10:56:38 AM DOCUMENT SUPPLIED ON 04/17/2026 10:18:23 AM 2773497263418

Doc ID: 5a45451c5d708cdc33027815ee6ad5c1bf3c96d2

80. Defendant made no effort to research Dr. Sheikali's record or reputation as a doctor before posting its biased portrayal of him and implied he was not fit to treat patients.

WHERFORE, Plaintiff respectfully prays that this Court

A. Award damages in the amount of $200,000.00

B. Award punitive damages

C. Order Defendant to remove all social media posts that mention Plaintiff

D. Award any and all other relief this Court deems just and equitable

## COUNT VI: DEFEMATION *PER SE* FOR DEFENDANT KORINOW IMPLYING THAT DR. SHEIKALI DOES NOT TREAT PATIENTS THE SAME AND THAT JEWISH PATIENTS WOULD BE UNSAFE BEING TREATED BY HIM

81. Plaintiff restates and realleges all preceding paragraphs as if pleaded herein.

82. Implied statements that fall within one of the listed four categories are statements that are defamation *per se. See Bryson v. News America Publications Inc.*, 174 Ill. 2d 77 (1996) (holding that a story in a magazine that called plaintiff a slut and implied she was unchaste was sufficient to state a claim for defamation *per se*).

83. Defendant Korinow states directly that Dr. Sheikali, "should not be practicing medicine" with the clear implication that it is because Dr. Sheikali would discriminate against Jewish patients and that it would be unsafe to be Dr. Sheikali's patient.

84. This false statement impugns Dr. Sheikali's integrity and suggests that he is unfit to do his job.

85. The statement made by Defendant Korinow has a precise and readily understood meaning.

86. There is no reasonable innocent construction of Defendant Korinow's statement.

87. Defendant Korinow's statement is not an expression of opinion.

REQUEST RECEIVED ON-MMILLER@MSMILLERLAW.COM-04/17/2026 10:56:38 AM DOCUMENT SUPPLIED ON 04/17/2026 01:18:23 AM 1773495263412

Doc ID: 5a45451c5d70bcdc33027815eee0ad5c1bf3c96d2

88. Defendant Korinow's statement is verifiably false.

89. Defendant Korinow himself acknowledges that he is making statements that are false; he defended his decision stating, "slandering this ER doc who should not be treating patients in a group of 24k ER docs is quite appropriate."

90. Defendant Korinow justifies his lies by claiming that advocating for a "free Palestine" is the same as wiping Israel off the map and supporting "the worst terrorist groups".

91. Supporting a free Palestine does not mean wiping Israel off the map or supporting terrorist groups; the majority of the international community publicly supports a two-state solution that would recognize both a free Palestinian state and the sovereignty of an Israeli state[2].

92. Defendant Korinow continued commenting below his own post urging other doctors to contact their local news stations and trying to make the defamatory posts as public as possible.

93. On information and belief, Defendant Korinow contacted ABEM in an attempt to get Dr. Sheikali's certification revoked.

94. Dr. Sheikali has suffered extreme emotional distress because of Defendant Korinow's defamatory comments which led to other emergency room doctors commenting and disparaging him and led to Dr. Sheikali's removal from the Facebook community.

WHERFORE, Plaintiff respectfully prays that this Court

A. Award damages in the amount of $200,000.00

B. Award punitive damages

C. Order Defendant to remove all social media posts that mention Plaintiff

---

[2] UN overwhelmingly backs two-state solution to Israel-Palestinian conflict | AP News, Edith M. Lederer, last updated September 12, 2025 at 5:02 PM CDT, last accessed on October 31, 2025 at 2:02 PM CDT.

REQUEST RECEIVED ON-MMILLER@MSMILLERLAW.COM-04/17/2026 10:56:38 AM DOCUMENT SUPPLIED ON 04/17/2025 0 b18:23:30 27819726348 Doc ID: 5a45451c5d70bcdc33027815ee6ad5c1bf3c96d2

D. Award any and all other relief this Court deems just and equitable

Respectfully Submitted,

s/ *Noah Halpern*

Noah Halpern
ARDC #6342199
CAIR-Chicago
17 N. State Street Suite 1500
Chicago, Illinois, 60602
Attorney for Plaintiff

## **CERTIFICATION**

Under penalties as provided by law pursuant to 735 ILCS §5/1-109 of Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

_____

Sam Sheikali

02 / 27 / 2026

_____

Date

REQUEST RECEIVED ON-MMILLER@MSMILLERLAW.COM-04/17/2026 10:56:38 AM DOCUMENT SUPPLIED ON 04/17/2026 10:18:23 AM 27819726343

Doc ID: 5a45451c5d708cdc33027815ee6ad5c1bf3c96d2

**✖ Dropbox** Sign                                        Audit trail

| | |
|---|---|
| **Title** | CAIR-Chicago has sent you a document to review and sign -... |
| **File name** | 2026-02-26 Defama...t against PAS.pdf |
| **Document ID** | 3a45451c5d708cdc33027815ee6ad5c1bf3c96d2 |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

**This document was requested on app.practicepanther.com and signed on app.practicepanther.com**

## Document History

| | | |
|---|---|---|
| ⤤ **SENT** | **02 / 27 / 2026**<br>14:49:42 UTC | Sent for signature to Sam Sheikali ████████████████ )<br>by support@practicepanther.com acting on behalf of<br>nhalpern@cair.com<br>IP: 50.198.8.222 |
| ◎ **VIEWED** | **02 / 27 / 2026**<br>14:50:08 UTC | Viewed by Sam Sheikali (████████████████ )<br>IP: 24.1.158.211 |
| ✍ **SIGNED** | **02 / 27 / 2026**<br>14:50:56 UTC | Signed by Sam Sheikali (████████████████<br>IP: 24.1.158.211 |
| ✓ **COMPLETED** | **02 / 27 / 2026**<br>14:50:56 UTC | The document has been completed. |

Powered by **✖ Dropbox** Sign